**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ROBERT MCBRIDE on behalf of himself and all others similarly situated,**

**Plaintiffs,**

**v.**

**RAPIDCOURT, LLC,**

**Defendant.**

**Civil No.** 2:17cv628

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Robert McBride, by and through his attorneys, on behalf of himself and the Classes set forth below, bring the following Class Action Complaint against RapidCourt, LLC, ("RapidCourt" or "Defendant").

## INTRODUCTION

1. This action is brought under the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x. The FCRA imposes several important substantive requirements on consumer reporting agencies ("CRAs"), like Defendant, that sell employee and job applicant background checks.

2. Defendant is a CRA that sells reports to other CRAs, who, in turn sell that information to employers. Defendant sold a report on Plaintiff to a third-party CRA, who in turn sold that report to his prospective employer, Medical Facilities of America, Inc. ("MFA"). Like numerous other employers, MFA uses consumer reports that include public records received from Defendant to make employment decisions.

3. Defendant maintains a national database of public criminal records as a for-profit consumer reporting agency. Defendant maintains a FCRA database to prepare and furnish consumer reports for employment and other purposes.

4. Plaintiff brings nationwide class claims against Defendant under 15 U.S.C. § 1681c(a) because Defendant's reports included criminal charges that did not result in convictions and which predate their reports by more than seven years.

5. Defendant's report on McBride included information about dismissed charges from 1996, 2001 and 2005. This information should not have been included on Plaintiff's report.

6. Defendant's report also misrepresented McBride as having been convicted of an assault and battery when in fact he was not. McBride brings an individual claim based on the inaccuracy. 15 U.S.C. § 1681e(b) requires CRAs to follow reasonable procedures to ensure maximum possible accuracy of its reports. Defendant's failure to consult the actual court record was unreasonable and led to the error in McBride's report.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendant regularly conducts business in the district and division. Plaintiff resides in this District and in this Division. Significant third-party evidence and witness testimony is located here.

**THE PARTIES**

8. Plaintiff is a natural person and a "consumer" as protected and governed by the FCRA.

9. Plaintiff lives in Norfolk, Virginia, which is within the territorial confines of the Eastern District of Virginia.

10. Defendant RapidCourt, LLC is a North Carolina corporation with its principal office located at 9710 Northcross Center Court, Suite 105, Huntersville, North Carolina.

11. At all times relevant to this Complaint, RapidCourt operated as a "consumer reporting agency" as defined and governed by the FCRA. It is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports to third parties, including within this District and Division.

12. The FCRA defines a "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f)

13. In turn, the FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for…employment purposes." 15 U.S.C. § 1681a(d)

14. Defendant is a consumer reporting agency because, in exchange for monetary fees, it assembles information on consumers which it compiles into reports which it sells to third parties. Specifically, it aggregates criminal and driving records of consumers into consumer reports which it sells to other consumer reporting agencies, knowing that those consumer reporting agencies will

include this information on consumer reports which are being used for employment purposes. Defendant uses interstate commerce, including the internet, in providing these reports.

**CONGRESS' PURPOSE IN ENACTING THE FCRA'S PROTECTIONS**

15. Enacted in 1970, the FCRA's passage was driven in substantial part concerns: that consumer reports were being used for employment purposes without adequate protections against the harms caused by widespread errors and inaccuracies.

16. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

17. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information like criminal history. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

18. The FCRA also governs the information that can be included in reports that CRAs provide. Certain items of information are too old to report and may not be included. Section 1681c(a) prohibits the reporting of:

> (1) Cases under Title 11 or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years.
>
> (2) Civil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.
>
> (3) Paid tax liens which, from date of payment, antedate the report by more than seven years.

> (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.
>
> (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years. . . .

15 U.S.C. § 1681c(a).

19. Any information that falls into these categories cannot be reported in the employment context unless the salary for the position to which the report is attached is $75,000 or more per year. *Id.* § 1681c(b)(3). Plaintiff's salary would not have reached this threshold.

20. For employment-purposed reports for jobs with salaries reasonably expected to be below $75,000 per year, RapidCourt willfully fails to exclude information that predates reports by more than seven years as required by Section 1681c(a).

21. The inclusion of this information defeated Congress's goal of excluding prejudicial information after the passage of time. In keeping with its stated goal of ensuring "fairness" to consumers, Congress wanted to allow consumers a fresh start after the passage of time. Congress passed § 1681c in recognition of the fact that old information about negative events can have an unfairly prejudicial effect because the negativity of the event overwhelms the fact that the event is old. As noted by Senator Proxmire during the passage of the FCRA, "One of the common irrelevancies perpetuated by credit reporting agencies is furnishing information on minor offenses committed many years ago." 115 Cong. Rec. 2412 (1969) (Statement of bill sponsor Sen. Proxmire).

22. Another legislator explained that the FCRA's protections represented "new safeguards to protect the privacy of employees and job applicants;" the Act as a whole, he continued, was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement

of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections").

23. Consumers' interest in not having old information disclosed is deeply rooted in privacy concerns. According to the federal government, "Section 1681c's restrictions on disclosing older adverse information serve the governmental interest in protecting individuals' privacy." Mem. of the U.S. in Supp. of the Constitutionality of §1681c of the FCRA, *King v. Gen. Info. Servs., Inc.*, No. 2:10-cv-6850, ECF No. 52 at 10 (E.D. Pa. May 3, 2012). The restriction of access to information, even information that is otherwise publicly available, has been recognized by the Supreme Court as implicating privacy concerns and as being grounded in common law. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) (finding privacy right in not having a "rap sheet" consisting of a compilation of publicly available information).

24. Numerous academics have also noted that the FCRA enshrines privacy by recognizing the link between protecting individual privacy and forbidding the disclosure of old information. *See* Steven C. Bennett, The "Right to Be Forgotten": Reconciling EU and US Perspectives, 30 Berkeley J. Int'l L. 161, 167 (2012) (citing the FCRA's bar out reporting outdated information as an example of "'data minimization' (a form of the right to be forgotten)" which "has long been a central element of 'fair information practices'"); Meg Leta Ambrose, It's About Time: Privacy, Information Life Cycles, and the Right to Be Forgotten, 16 Stan. Tech. L. Rev. 369, 378–79 (2013) ("the Fair Credit Reporting Act generally disallows the use of information older than seven years that may cast the consumer in negative or unfavorable light...the hope is

that the information no longer represents the individual and would limit her opportunities if it were attached to her name as she moves through life").

25. Like Congress, numerous states have similarly recognized that the reporting of old adverse information harms job applicants and have imposed similar bans. *See, e.g.*, N.Y. Gen. Bus. Law § 380-j; Tex. Bus. & Com. Code Ann. § 20.05; California Civil Code § 1786.18(a)(7); N.H. Rev. Stat. Ann. § 359-B:5.

26. By failing to provide Plaintiff with the "fresh start" mandated by Congress, and by failing to respect the privacy of Plaintiff's information, Defendant did concrete harm to him and presented a portrait of him to prospective employers that was worse than it would have been had Defendant followed the law. This violation of law was a concrete harm. *Gambles v. Sterling Infosystems, Inc.*, 15-cv-9746, ECF No. 72 (S.D.N.Y. Feb. 13, 2107); *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5–6 (N.D. Cal. July 26, 2016) (plaintiff suffered concrete injury sufficient to sue under 15 U.S.C. § 1681c(a) and § 1681e(b) when defendant created background report including arrests of plaintiff more than seven years old, because defendant "published plaintiff's stale arrests . . .[and] thereby sent restricted information about plaintiff into the world and as such caused injury to plaintiff's privacy interest").

27. Defendant's practice reporting outdated adverse information violates a fundamental protection afforded to consumers under the FCRA, is contrary to the unambiguous language of the statute, and is counter to longstanding judicial and regulatory guidance. *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano v. Sterling Infosystems, Inc.*, 557 F.

Supp. 2d 688 (C.D. Cal. 2008) (holding that the FCRA prohibits even *alluding* to existence of unreportable adverse information).

28. Additionally, 15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports. Defendant routinely violates the FCRA by failing to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports, such as consulting the actual public record, leading to errors like reporting as convictions charges that are subsequently reduced.

**FACTUAL ALLEGATIONS**

29. Plaintiff McBride applied for an employment opportunity as a cook at Medical Facilities of America, Inc.'s ("MFA") Norfolk Rehabilitation Center in August 24, 2015. As part of the application process, Plaintiff McBride completed a lengthy application over the Internet.

30. MFA ran a background check on Plaintiff McBride using the Virginia State Police *Virginia Criminal Information Network* ("VCIN"), around August 24. Apparently satisfied with the contents of that background check, MFA offered Plaintiff McBride a job the same day.

31. In connection with his application, MFA requested a consumer background report on Plaintiff McBride from a reseller consumer-reporting agencies, Apex Background Check, Inc. ("Apex").

32. In turn, Apex requested a consumer report regarding Plaintiff from RapidCourt by logging into the RapidCourt interface and purchasing a consumer report from Defendant. Upon receiving the report from RapidCourt, Apex then resold it to the MFA.

33. When MFA received the RapidCourt report through Apex, it rescinded Plaintiff McBride's job offer because the report contained arrest and grand jury information regarding charges that were in fact dismissed or reduced.

34. Plaintiff was not provided with a copy of either the Apex report or the RapidCourt report.

35. Plaintiff discovered that Apex purchased a consumer report from Defendant in April 2017.

36. The records Defendant furnished were criminal records from Virginia General District and Circuit Courts.

37. The report Defendant furnished contained criminal record information, other than convictions of crimes, which predated the report by more than seven years. Defendant reported two dismissed criminal charges from 2001, and one charge from 1996 and three from 2005 that the prosecutor abandoned (i.e., *nolle presequi*).

38. The report Defendant furnished also contained inaccurate information in that it reported a conviction for assault and battery that was reduced to disorderly conduct after an appeal.

39. These criminal conviction public records had an adverse effect on McBride's ability to obtain or maintain employment.

40. Such reporting of obsolete information violates FCRA Section 1681c(a)(5), as CRAs must exclude any criminal information that is not a conviction and that is older than seven years.

41. Additionally, once Defendant has added a public record item to its database, it does not have in place a procedure to recheck that record to ensure that it remains open and is not expunged.

42. Defendant does not restrict or limit the purchase and resale of its database criminal records that are otherwise obsolete under 15 U.S.C. § 1681c.

43. Defendant advertises its services in a manner that confirms that it is a FCRA-governed CRA. It describes its services as "seamlessly connecting users to relevant records from thousands of sources" and in fact boasts that it is a founding member of the National Association of Professional Background Screeners (NAPBS), which was "was established to represent the interest of companies offering employment and tenant background screening services" and states that "NAPBS Member companies are defined as 'consumer reporting agencies' pursuant to the Fair Credit Reporting Act (FCRA)".

44. Defendant does not furnish credit reports, for consumers or otherwise.

45. Each of the reseller CRAs also functioned as a "user" of the consumer reports provided by Defendant as that term is defined by the FCRA.

46. The employers were at best "end users" of the consumer reports as that term is defined by the FCRA.

**Defendant's Violations Were Willful**

47. Defendant is aware of its obligations under the FCRA, but chooses not to comply, because the costs of compliance would harm its bottom line and impair its business model.

48. Defendant is a "founding member" of the National Association of Professional Background Screeners ("NAPBS"). NAPBS frequently undertakes efforts to educate its membership regarding their statutory obligations under the FCRA, including with respect to the specific provisions Defendant was and is routinely violating.

49. Further, Defendant is very aware of the allegations made against its competitors in the wholesale reporting niche and decisions of courts finding those reporting agencies governed by the FCRA provisions alleged in this case.

50. The requirements of 15 U.S.C. §§ 1681c and 1681e(b) are well established, pellucid

and objectively clear.

51. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and the Consumer Financial Protection Bureau.

52. Defendant obtained and had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiff and other members of the classes of their rights under the FCRA.

53. Plaintiff alleges that Defendant's conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

54. When Defendant undertook its business model, it considered and understood that it would be later challenged by consumers as governed and regulated as a FCRA consumer reporting agency.

55. Nevertheless, Defendant made an economic decision that it would accept the risks of harming consumers in order to avoid greater expenses necessary to obtain complete and current public records and maximize profit.

56. Defendant could have instituted a procedure of verifying the records it reports at the original source before reporting them, as some CRAs do, but it chose not to do so, despite the fact that this created FCRA liability. Defendant's decision not to verify its reports by consulting the actual court file was based on Defendant's profit motive.

57. Defendant also could have instituted a procedure or computer algorithm to avoid reporting non-conviction information older than seven years, as almost all CRAs do, but it chose

not to do so, despite the fact that it knew that reporting this outdated information was in violation of the FCRA.

**COUNT I**
**15 U.S.C. § 1681c – Class Claim**

58. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

59. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff McBride brings this action for himself and on behalf of a class (the "1681c Class") defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant RapidCourt; (b) within the five-year period preceding the filing of this action and during its pendency, (c) where Defendant RapidCourt's database showed that the report contained at least one adverse criminal record other than a conviction; and (d) where the criminal record was older than seven (7) years on the date Defendant furnished its report.
>
> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any judge assigned to hear this action and his or her immediate family or staff.

60. The Class is so numerous that joinder of all class members is impracticable. Defendant produces reports nationwide, and has produced thousands of reports on consumers during the class period, many of whom are members of the Class. The names and addresses of class members are identifiable through documents maintained by Defendant and its customers. Class members may be notified of the pendency of this action by published and/or mailed notice.

61. Plaintiff's claims are typical of those of the class members. All are based on the same facts and legal theories. Defendant does not have and follow any procedure to filter and avoid furnishing obsolete non-conviction criminal records. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiff's claim rises or falls.

62. There are questions of law and fact common to the class, which common issues

predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Defendant's conduct and procedures were uniform to the class members; (b.) Whether Defendant willfully violated the FCRA by including adverse information, other than criminal convictions other than seven years on the reports that it sold; (c.) Whether Defendant systematically reports obsolete criminal record information in consumer reports in violation of 15 U.S.C. § 1681c; (d.) whether Defendant was governed by the FCRA and §1681c; and (e.) whether Defendant acted willfully in its failure to design and implement the procedures required by 15 U.S.C. § 1681c. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

63. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

64. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

65. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

66. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil

Procedure is also appropriate in that:

a. As alleged herein, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers harmed by Defendant's FCRA violation would likely be unaware of their rights under the law, the identity and procedures of the Defendant or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time.

67. Defendant's reports on Plaintiff McBride and each Class member included adverse criminal information, other than criminal convictions, older than seven years, in violation of § 1681c.

68. As to the Named Plaintiff and each Class member, Defendant uniformly fails to comply with the rigors of FCRA § 1681c and has no procedure in place to filter and avoid furnishing obsolete non-conviction criminal records.

69. Defendant's conduct, action, and inaction was willful, rendering it liable for statutory between $100 and $1,000 per consumer and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

70. Plaintiff and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71. Plaintiff McBride and the 1681c class are entitled to statutory damages of not less than $100 and not more than $1,000 this violation. Plaintiff is also entitled to punitive damages and to recover costs and attorneys' fees.

**COUNT II**
**15 U.S.C. § 1681e(b) – Individual Claim by Plaintiff McBride**

72. Plaintiff McBride reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

73. Defendant violated 15 U.S.C. § 1681e(b) as to Plaintiff McBride by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished regarding Plaintiff. This led to Defendant reporting Plaintiff's reduced charge as a conviction for a more serious offense.

74. As a result of Defendant's conduct, Plaintiff suffered actual damages including, by example only and without limitation, loss of employment, embarrassment, frustration and other actual damage.

75. Defendant's violations of 15 U.S.C. § 1681e(b) were willful, rendering it liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

76. Plaintiff McBride is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE**, Plaintiff and the putative Class respectfully pray for the following relief:

A. An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

B. The creation of a common fund available to provide notice of and remedy Defendant's unlawful conduct;

C. That judgment be entered for Plaintiff McBride for actual damages or in the alterative statutory damages, and punitive damages against Defendant for its violation of 15 U.S.C. § 1681e(b) pursuant to 15 U.S.C. §§ 1681n and § 1681o;

D. That judgment be entered for Plaintiff and each class member for statutory damages and punitive damages against Defendant for its violation of 15 U.S.C. § 1681c pursuant to 15 U.S.C. §§ 1681n;

E. Equitable and/or injunctive relief;

F. Attorneys' fees, expenses and costs; and

G. Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**ROBERT MCBRIDE, *individually and on behalf of and all others similarly situated***

By:________/s/__________________

Leonard A. Bennett, VSB No. 37523
Craig C. Marchiando VSB No. 89736
Elizabeth W. Hanes VSB No. 75574
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601

Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: elizabeth@clalegal.com

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
**KELLY & CRANDALL, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com

***Attorneys for the Plaintiff***